IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| LORI COLTHARP, | ) |
| Plaintiff, | ) |
| v. | ) Civ. Act. No.: 2:14-cv-233-ECM |
| | ) (WO) |
| UNITED STATES OF AMERICA, | ) |
| Defendant. | ) |

**MEMORANDUM OPINION and ORDER**

**INTRODUCTION**

Pursuant to the Federal Torts Claims Act ("FTCA"), 28 U.S.C. § 2671, Plaintiff Lori Coltharp ("Coltharp") brings this action against the United States,[1] alleging that the United States breached its duty of care to protect her when she was attacked by another patient while hospitalized in the Central Alabama Veterans Health Care System ("CAVHCS") in Tuskegee, Alabama. According to Coltharp, the United States negligently and wantonly failed to "provide and maintain a non-dangerous, safe and secure hospital environment and program" because another patient physically assaulted her while she participated in a Veterans Administration ("VA") substance abuse treatment program. (Doc. 13 at 16, para. 70). She seeks to hold the United States liable under the FTCA for the alleged wrongful conduct of VA staff for failing to protect her and for allowing a violent patient into the program. Jurisdiction of this case is premised on the Court's federal

---

[1] On July 3, 2014, Coltharp amended her complaint naming the United States as "the only proper defendant in this instant Federal Torts Claims Act action." (Doc. 13 at 1, para 2).

question jurisdiction, 28 U.S.C. § 1331, and the jurisdictional grant contained in 28 U.S.C. § 1346(b) for federal tort claims.

Now pending before the Court is the United States' motion to dismiss, pursuant to Fed.R.Civ.P. 12(b)(1), asserting that this Court lacks subject matter jurisdiction because the Plaintiff's claims are barred by the discretionary function exception to the FTCA, 28 U.S.C. § 1346(b) and 28 U.S.C. § 2680(a). (Doc. 14). Also pending before the Court is Coltharp's motion to substitute party (doc. 31) and her amended motion to substitute party (doc. 33) seeking to substitute Coltharp's daughter as *Administrator ad Litem* of Coltharp's estate because Coltharp is now deceased. The Court has carefully reviewed the motion to dismiss, the briefs, and the attachments filed in support of and in opposition to the motion. For the reasons that follow, the Court concludes that the Defendant's motion to dismiss is due to be granted, and the Plaintiff's motions to substitute are due to be denied as moot.

## DISCUSSION

There is no dispute that Coltharp's exclusive remedy is pursuant to the FTCA. *See* 28 U.S.C. § 2679. "It is, of course, 'axiomatic' under the principle of sovereign immunity 'that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction.'" *Adeleke v. United States*, 355 F.3d 144, 150 (2nd Cir. 2004) (quoting *United States v. Mitchell*, 463 U.S. 206 (1983)); *Means v. United States*, 176 F.3d 1376, 1378 (11th Cir. 1999) ("[S]overeign immunity bars suit against the United States [and its agencies] except to the extent it consents to be sued.").

The FTCA waives the United States' sovereign immunity from suit in federal courts for certain tort claims arising from the actions of its employees. *Cohen v. United States*,

2

151 F.3d 1338, 1340 (11th Cir. 1998); *Ochran v. United States*, 117 F.3d 495, 499 (11th Cir. 1997). Specifically, Congress waived sovereign immunity and granted consent for the United States to be sued for acts committed by any "employee of the Government while acting within the scope of his office or employment."[2] 28 U.S.C. § 1346(b)(1).

There are, however, several explicit exceptions to this waiver of sovereign immunity, *Cohen*, 151 F.3d at 1340, including the discretionary function exception which is at issue in this case. Exceptions to the FTCA are "strictly construed in favor of the United States." *Zelaya v. United States*, 781 F.3d 1315, 1322 (11th Cir. 2015) (quoting *JBP Acquisitions, LP v. United States ex rel. F.D.I.C.*, 224 F.3d 1260, 1263-64 (11th Cir. 2000)). The discretionary function exception revives sovereign immunity when the claim against the government is based on a government actor's "exercise or performance or the failure to exercise or perform a discretionary function or duty . . . whether or not the discretion involved [is] abused."[3] 28 U.S.C. § 2680(a). Thus, it is the Plaintiff's burden to

---

[2] The FTCA, in pertinent part, provides that

> the district courts ... shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages ... for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b) & § 2679(b)(1).

[3] The exception provides that the Government is not liable for

> [a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a).

3

"prove that the discretionary function exception [to the FTCA] does not apply" when the United States asserts that the discretionary function exception bars her claims. *OSI, Inc. v. United States*, 285 F.3d 947, 951 (11th Cir. 2002); *Lawrence v. United States*, 597 F. App'x 599, 603-04 (11th Cir. 2015); *Willett v. United States,* 24 F. Supp. 3d 1167, 1178-79 (M.D. Ala. 2014).

### A. Standard of Review

The United States asserts that this case should be dismissed pursuant to FED.R.CIV.P. 12(b)(1). Coltharp argues that because subject matter jurisdiction and the merits of the case are "so intertwined," the Court should "look with disfavor" on the government's Rule 12(b)(1) motion. (Doc. 19 at 13-17). A Rule 12(b)(1) motion to dismiss challenges the subject matter jurisdiction of the court, and the Rule permits a facial or factual attack. *See McElmurray v. Consolidated Gov't of Augusta-Richmond Cty.*, 501 F.3d 1244, 1251 (11th Cir. 2007); *Barnett v. Okeechobee Hosp.*, 283 F.3d 1232, 1238 (11th Cir. 2002). By arguing that the discretionary function exception bars Coltharp's claims, the United States mounts a factual challenge to the Court's subject matter jurisdiction. *United States Aviation Underwriters, Inc., v. United States*, 562 F.3d 1297, 1299 (11th Cir. 2009); *Hogan v. United States Postmaster General*, 492 F. App'x 33, 34 (11th Cir. 2012). A factual attack on subject matter jurisdiction challenges the existence of subject matter jurisdiction in fact, regardless of the pleadings, and matters outside the pleadings are considered in the analysis. *McElmurray,* 501 F.3d at 1251. When analyzing a factual attack, the court is free to weigh the available evidence to satisfy itself of the existence of subject matter jurisdiction. *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990).

4

B.     **Discretionary Function Exception to the FTCA**

The Court now turns to the applicability of the discretionary function exception of the FTCA to the Plaintiff's claims.[4] The exception covers only those acts that are discretionary in nature – acts that "involv[e] an element of judgment or choice." *United States v. Gaubert*, 499 U.S. 315, 322 (1990) (quoting *Berkovitz v. United States*, 486 U.S. 531, 536 (1988)). Moreover, "it is the nature of the conduct, rather than the status of the actor" that governs whether the exception applies. *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 813 (1984).

A claim falls within the discretionary function exception of the FTCA when it meets two requirements: (1) the challenged decision must involve an element of choice, and (2) the governmental decision must implicate an exercise of judgment grounded on considerations of public policy. *Gaubert*, 499 U.S. at 322. In determining whether the discretionary function exception applies, the Court must first determine whether the nature of the government actor's conduct involves an element of judgment or choice. *Zelaya*, 781 F.3d at 1329-30. "[T]he inquiry focuses on 'whether the controlling statute or regulation mandates that a government agent perform his or her function in a specific manner.'" *Id.* at 1329 (quoting *Hughes v. United States*, 110 F.3d 765, 768 (11th Cir. 1997)). "[I]f a federal statute, regulation, or policy specifically prescribes a course of action for an

---

[4] The Plaintiff argues that the Defendant's motion to dismiss is "due to be denied and or (sic) barred by judicial estoppel" because the Department of Veterans Affairs "made a determination of negligence against itself" in its decision awarding a disability rating to Coltharp. (Doc. 19 at 7). An anonymous disability decision issued by the VA does not bar the Court from considering the United States' motion to dismiss, and the Plaintiff has not established otherwise.

employee to follow," and "the employee has no rightful option but to adhere to the directive," the conduct does not involve an element of choice and therefore is not discretionary. *Berkovitz*, 486 U.S. at 536. "Only if a federal statute, regulation, or policy specifically prescribes a course of action, *embodying a fixed or readily ascertainable standard*, will a government employee's conduct not fall within the discretionary function exception." *Autery v. United States*, 992 F.2d 1523, 1529 (11th Cir. 1993) (emphasis original) (internal citations and quotations omitted). Thus, Coltharp must provide the Court with a controlling statute, regulation, or policy that specifically prescribes a course of action, embodying a fixed or readily ascertainable standard, if she is to escape the discretionary function exception under the first step of the *Gaubert* test. If Coltharp fails to provide the Court with such a statute, regulation, or policy, the government actor's conduct, or lack thereof, will be found to involve an element of judgment or choice, and the analysis will advance to the second step.

Thus, the existence of a statute, regulation or internal policy of CAVHC that imposes a mandatory obligation on employees to provide a safe and secure hospital environment, and protects Coltharp from third party assaults is determinative to the United States' motion to dismiss based on the discretionary function exception to the FTCA. In her amended complaint, Coltharp alleges that the VA was negligent and wanton in its failure to provide and maintain a safe and secure hospital environment, and its failure to adhere to a zero-tolerance policy concerning violence in the treatment program resulted in her injuries. Thus, the Court must ask whether the safety and security policies of the VA

left any staff with an element of judgment or choice in how to enforce those safety and security policies.

> It is also important to set out what is not at issue in the discretionary-function analysis. As the Eleventh Circuit has emphasized, "[The court's] concern under the discretionary-function exception is not whether the allegations of negligence are true." *Hughes v. United States*, 110 F.3d 765, 767 n.1 (11th Cir. 1997). "[I]nstead, [the court's] concern is whether the nature of the conduct involves judgment or choice and whether that judgment is of the kind that the exception was designed to protect." *Id.*; *see also, Autery*, 922 F.2d at 1528 (criticizing the district's court analysis because it "appear[ed] to [have] collapse[d] the question of whether the Park Service was negligent into the discretionary function inquiry.")

*Willett*, 24 F. Supp. 3d at 1172, n.2 (alterations in the original).

Coltharp does not identify any specific statute, regulation, or policy that was violated and which resulted in her injuries.[5] Instead, she relies on a December 31, 2012 VA Rating Decision[6] written by an anonymous author where a zero-tolerance policy is referenced. Coltharp argues that this zero-tolerance policy reference is evidence that VA employees had no discretion with respect to placement of violent patients in the treatment program. *See* Doc. 19. According to Coltharp, the "zero-tolerance policy" referenced in

---

[5] Coltharp was given the opportunity to conduct limited jurisdictional discovery to uncover and provide the Court with an applicable, mandatory policy or regulation that would strip the VA actors of discretion. She had until February 20, 2018, to conduct jurisdictional discovery. (Doc. 30). On February 2, 2018, the Plaintiff requested "additional time in order to meet and confer with [Coltharp's] survivors . . . and thereafter proceed to conduct jurisdictional discovery." (Doc.31). Counsel requested additional time to substitute a party for Coltharp who is deceased. On March 23, 2018, Coltharp filed a renewed and amended motion (doc. 33) to substitute Coltharp's daughter as Administrator ad Litem for decedent Coltharp. (*Id.*) At the end of her motion to substitute, with no explanation, Coltharp again asked for an extension of time to conduct jurisdictional discovery. (*Id*. at 3). The request for an extension of time, embedded in the motion to substitute, does not comply with Fed.R.Civ.P. 7(b)(1)(B) ("A request for a court order must be made by motion. The motion must: . . . state with particularity the grounds for seeking the order;"). *See Newton v. Duke Energy Fla., LLC*, 895 F.3d 1270, 1277 (11th Cir. 2018).

[6] The decision found Coltharp 70% disabled due to posttraumatic stress disorder resulting from the attack.

7

the disability decision was sufficient to mandate a course of action for the VA staff to prevent the other patient from participating in the treatment program. Under the "Reasons for Decision" section of the VA Rating Decision, the unidentified author wrote:

> You contend that the VA staff exhibited negligence by allowing residence to the attacker after he had previously been removed from the program due to the report of an assault on another resident. **The SAPT program has a zero tolerance policy concerning violence.**
>
> \*     \*     \*
>
> Therefore, service connection for PTSD is granted under 38 U.S.C. § 115 **due to the negligence of the VA staff to permit a suspect violent offender participate in the SAPT program**, and the medical opinion provided by your VA examiner.

(Doc. 13-2 at 2-3) (emphasis added).

Coltharp's reliance on the VA Rating Decision is misplaced. Coltharp must point to "a federal statute, regulation, or policy" that "specifically prescribes a course of action, *embodying a fixed or readily ascertainable standard*" if she is to prevail under the first step of the *Gaubert* test. *Cohen*, 151 F.3d at 1343; *Autery*, 992 F.2d at 1529. At best, the VA Rating Decision alludes to some sort of "zero tolerance policy concerning violence." (Doc. 13-2 at 2). Even if the Court were to find that the language in the decision is sufficient to establish that there is a zero-tolerance policy for violence, there is no information before the Court, by way of evidence or factual allegation, as to what the policy mandates or proscribes, or the way in which the policy is implemented. Coltharp points to no procedure that staff is required to follow when faced with violent patients. There are no allegations as to how this zero-tolerance policy is applied to admissions of new patients or to existing patients who exhibit violent behavior. In short, the bare reference to a "zero tolerance

8

policy concerning violence" in the instant case does not provide VA actors with the required fixed or readily ascertainable standard necessary for Coltharp to prevail. *See Cohen*, 151 F.3d at 1343.

Coltharp also argues that the VA's Handbooks for mental health rehabilitation treatment programs establish mandatory and non-discretionary policies because they mandate that the VA "must have adequate staffing to create a safe, effective, and appropriate clinical care." (Doc.19-1 at 12). Coltharp points the Court to a number of instances in which the Handbooks utilize the word "must" when describing duties. However, the use of the word "must" does not mean that the Handbooks left the VA staff no room to employ judgment of choice regarding the manner in which those duties may be performed. The Handbooks do not mandate the way in which the VA staff must provide security, assess threats, or determine placement and assessments of patients. For example, the VA's admission standards for the program in which Coltharp was enrolled provide that in order for a veteran to be admitted, he or she "must[] . . . be assessed as not a significant risk of harm to self or others." (Doc. 19-1 at 18, VHA Handbook 1162.02 § 16(c)). However, there are no specific directives on how that assessment occurs, what the assessment includes, or how previous acts of violence are to be considered, all of which indicates that the VA staff retain discretion to assess patients for participation in treatment programs.

Additionally, a review of VA regulations and internal agency guidelines demonstrate that VA staff retain wide discretion in implementing security policies and handling disruptive patients. *See, e.g.,* 38 C.F.R. § 1.218(a) (Without providing specific

instructions, the Regulation states: "The head of the facility is charged with the responsibility for the enforcement of these rules and regulations [regarding security and law enforcement at VA facilities] . . . ."); 75 F.R. 69881-01, 2010 WL 4603311 (Without providing specific instructions, the Rule states: "The final rule authorizes VA to modify the time, place, and/or manner in which VA provides treatment to a patient, in order to ensure the safety of others at VA medical facilities . . . ."). Thus, the Court concludes that VA staff members maintain discretion in the interpretation of admission procedures, the handling of violent patients admitted to various VA programs, and the enforcement of security policies. Consequently, the first prong of the *Gaubert* test has been established -- the alleged challenged conduct involved an element of judgment or choice.

The second step in the *Gaubert* test asks whether the exercise of judgment at issue is the kind of judgment that the discretionary function exception was designed to shield. *Cohen v. United States*, 151 F.3d 1338, 1344 (11th Cir. 1998). The discretionary function exception was designed to shield decisions based on considerations of social, economic, or political policy. *Id.* (citing *Gaubert*, 499 U.S. at 322). In creating this exception, Congress sought to prevent the "judicial second-guessing" of legislative and administrative decisions that were based on these policy considerations. *Berkovitz*, 486 U.S. at 536-37; *S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. at 813-14. The Court need not determine whether a specific government actor actually balanced policy considerations in the exercise of discretion, but rather whether the exercise of discretion is susceptible to a policy analysis. *Cranford v. United States*, 466 F.3d 955, 958 (11th Cir. 2006); *see Autery*, 992 F.2d at 1531. In the present case, the relevant exercises of discretion

include the VA staff members' interpretations of admission procedures for treatment programs, handling violent patients in those programs, and the enforcement of safety and security policies at the VA hospital. These actions necessarily require the exercise of discretion; precisely the type of discretion the discretionary function exception is designed to protect.

In *Cohen*, the Eleventh Circuit considered whether the discretionary function exception applied in circumstances analogous to the present case. In *Cohen*, an inmate in a minimum-security federal prison sued the United States under the FTCA for injuries he suffered as the result of an attack by another prisoner. 151 F.3d at 1344.  Cohen alleged that the Bureau of Prisons negligently assigned his attacker to a minimum-security prison. *Id.* The Eleventh Circuit held that the discretionary function exception to the FTCA applied because the Bureau of Prisons retained discretion in how to manage security at its facilities. *Id*. at 1345.  Similar to the BOP's classification and placement of prisoners in *Cohen*, the VA's assessment, admission, assignment, placement, and removal of patients in its hospital treatment programs are grounded in policy. This balancing of policy considerations allows the VA to determine the number and kind of patients to admit and treat while attempting to provide the best care possible to all patients.  It further follows that the manner in which VA staff members respond to violence in their treatment programs is subject to the same policy analysis. VA staff is in the best position to determine which policies to promulgate regarding patient behavior and the way to enforce those policies while maintaining their overall policy objectives. Indeed, the Eleventh Circuit held that security-related decisions are precisely the type of policy decisions protected by the discretionary function exception.

*See Hughes*, 110 F.3d at 768 ("Decisions involving security at post offices are a fundamental part of the economic and social policy analysis required to achieve these goals."). Accordingly, the Court concludes that the second prong of the *Gaubert* test is met. Because both prongs of the Gaubert test are met, the discretionary function exception applies, and this Court does not have subject matter jurisdiction over Coltharp's claims.

## CONCLUSION

The Court concludes that the Plaintiff fails to identify an applicable, mandatory regulation or policy sufficient to deprive VA staff members the right to exercise discretion in the performance of their duties.  This discretion is the type Congress sought to protect with the creation of the discretionary function exception.  "If one of the exceptions [of the FTCA] applies, the bar of sovereign immunity applies."  *Dolan v. United States Postal Service*, 546 U.S. 481, 485 (2006).  *See also Willett*, 24 F. Supp. 3d at 1172 ("If the discretionary function exception applies, sovereign immunity bars this action.").  The Plaintiff's claims are barred by sovereign immunity because the alleged wrongful conduct falls within the discretionary function exception to the FTCA.  Thus, the Court concludes that it lacks subject matter jurisdiction and this case must be dismissed with prejudice.  Accordingly, it is

ORDERED that the United States' motion to dismiss (doc. 14) is GRANTED, and this case is DISMISSED with prejudice for lack of subject matter jurisdiction.  It is further

ORDERED that the Plaintiff's motion to substitute party (doc. 31) and amended motion to substitute are DENIED as moot.

A separate final judgment will be entered

DONE this 30th day of August, 2019.

                                  /s/ Emily C. Marks
                             EMILY C. MARKS
                             CHIEF UNITED STATES DISTRICT JUDGE